948 P.2d 995

**STATE of Arizona, Appellee,**

v.

**Charles Darren GREER, Appellant.**

No. 1 CA–CR 96–0883.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 25, 1997.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee.

Neal W. Bassett, Phoenix, for Appellant.

OPINION

EHRLICH, Judge.

Charles Darren Greer ("defendant") appeals from his conviction and sentence for second-degree murder. He specifically complains that the rule allowing jurors to ask questions is unconstitutional, and he contends that he was denied his right of appeal because the court reporter failed to transcribe the poll of the jury. We disagree with both contentions for the reasons which follow and we thus affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

The defendant and the victim got into a fight which resulted in the victim's death by strangulation. The defendant then buried the victim's corpse in a remote area.

The defendant was indicted for first-degree murder, convicted by a jury of second-degree murder and sentenced to an aggravated 18-year prison sentence. He appeals, raising two issues:

1. Whether ARIZ. R.CRIM. P. ("Rule") 18.6(e) violates his constitutional right to an impartial jury by permitting jurors to submit written questions directed to witnesses and

2. Whether the court reporter's failure to record the polling of the jurors constitutes fundamental error.

*DISCUSSION*

*1. Jurors' Questions.*

The Arizona Supreme Court amended Rule 18.6(e) in 1995 to state:

Jurors shall be instructed that they are permitted to submit to the court written questions directed to witnesses or to the court; and that opportunity will be given to counsel to object to such questions out of the presence of the jury. Notwithstanding the foregoing, for good cause the court may prohibit or limit the submission of questions to witnesses.

The revision followed a recommendation set forth in *Jurors: The Power of 12*, Report of the Arizona Supreme Court Committee on More Effective Use of Juries (Nov.1994) ("*Report*"). *See Report* at 90–92 and Appendix F.

At trial, the defendant argued that the rule was unconstitutional because it "add[ed] a third party into the proceedings who can produce evidence against the defendant,"

thereby reducing the state's burden of proof. The court overruled the defendant's objection and instructed the jurors that they could submit written questions. The defendant did not challenge the form of the instruction.[1]

As defense counsel says, the jury "took full advantage" of the opportunity to propound questions. After giving the attorneys an opportunity to object to each question outside the presence of the jury, the trial court declined to ask certain questions, and it refined other questions before asking them.

On appeal, the defendant does not challenge the trial court's procedure, nor does he complain of the questions either asked or refused. His argument is that Rule 18.6(e) turns jurors into advocates, thus destroying their impartiality.

The constitutional authority upon which the defendant relies is article 2, section 24 of the Arizona Constitution, which guarantees a defendant the right to an impartial jury. The defendant does not contend that he has a greater right under the Arizona Constitution than the federal one. Indeed, the Arizona Supreme Court has held that an accused's right to an impartial jury under our state constitution is coextensive with that in the Sixth Amendment to the United States Constitution. *State v. Wiley,* 144 Ariz. 525, 536, 698 P.2d 1244, 1255 (1985), *overruled on other grounds, State v. Superior Court (Gardner),* 157 Ariz. 541, 544, 760 P.2d 541, 544 (1988), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1638, 113 L.Ed.2d 733 (1991).

We are unable to find any successful constitutional challenge to the practice of allowing jurors to question witnesses. Indeed, in the English common law, the convention dates from at least the eighteenth century and in United States courts from the nineteenth century, Michael A. Wolff, Comment, *Juror Questions: A Survey of Theory and Use,* 55 Mo. L. Rev. 817, 817 (1990) ("Wolff, *Juror Questions*"); *see also United States v. Ajmal,* 67 F.3d 12, 14 (2d Cir.1995), and it is a procedure that is becoming increasingly familiar, always within the discretion of the trial court.

On at least three occasions, an Arizona appellate court has addressed and upheld the concept of juror-initiated questioning of witnesses. *Superior & Pittsburg Copper Co. v. Tomich,* 19 Ariz. 182, 188–89, 165 P. 1101, 1104 (1917), aff'd, 250 U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058 (1919), *and overruled on other grounds by Consolidated Ariz. Smelting Co. v. Egich,* 22 Ariz. 543, 556, 199 P. 132, 136 (1921); *State v. LeMaster,* 137 Ariz. 159, 163–65, 669 P.2d 592, 596–98 (App.1983); *State v. Taylor,* 25 Ariz.App. 497, 499–500, 544 P.2d 714, 716–717 (1976). In the civil case, the court presumed "that no harm befell the defendant by reason of the many questions asked the witnesses on this trial, for the reason the defendant first invited the asking of the questions [by the jurors], and at no time during the trial objected to that form of procedure." *Tomich,* 19 Ariz. at 188–89, 165 P. at 1104. In the criminal cases, the court deferred to the discretion of the trial court, noting that an educated juror "serves the cause of justice" if under the careful tutelage of the trial court, *LeMaster,* 137 Ariz. at 164, 669 P.2d at 597; *Taylor,* 25 Ariz.App. at 500, 544 P.2d at 717, and that "the interests of justice demand that jurors be well-informed with an opportunity to clarify matters they

---

1. The instruction was:

   You may have questions of the witnesses or me from time to time. If one is important to you, please write it down. Do not sign it, and hand it to the bailiff during a recess or signal if you have a question for a witness about to leave the witness stand. The bailiff will bring it right to me.
   You are to submit the question independently, and you are not to discuss the question among yourselves before submitting it.
   The purpose of a question is to clarify the evidence that has been presented, not to explore theories of your own.
   If I decide the question is a proper one after reviewing the question with the attorneys, an answer will be provided at the earliest logical opportunity.
   The question may be answered by stipulation or other means including additional testimony by the witness.
   Keep in mind, however, the rules of evidence or other rules of law may prevent some of your questions from being answered.
   I'll apply the same legal standards to your questions as I do to the questions asked by the lawyers.
   If the question may be properly asked, I'll read the question to the witness. If they choose to, the attorneys may follow up on the question. Do not speculate as to why your question was not asked if it wasn't. Failure to ask a question is not a reflection on the person asking it.

either did not hear or did not comprehend." *LeMaster,* 137 Ariz. at 165, 669 P.2d at 598; *see also Taylor,* 25 Ariz.App. at 500, 544 P.2d at 717.

Not having supportive state law, the defendant relies upon *United States v. Bush,* 47 F.3d 511 (2d Cir.1995), and *Ajmal,* 67 F.3d 12. In neither *Bush* nor *Ajmal* did the United States Court of Appeals for the Second Circuit hold that the practice of permitting jury questions violates any provision of the federal constitution. Indeed, in *Bush,* the court upheld the defendant's conviction and in *Ajmal,* although the conviction was reversed, the court concluded not that there was a constitutional violation but that the trial court had abused its discretion and there should be a new trial.

The Second Circuit in *Bush* and *Ajmal* did join other courts and commentators in voicing its disapproval of juror questioning of witnesses. The United States Court of Appeals for the First Circuit said that "[a]llowing jurors to pose questions during a criminal trial is a procedure fraught with perils." *United States v. Sutton,* 970 F.2d 1001, 1005 (1st Cir.1992); *see also DeBenedetto v. Goodyear Tire & Rubber Co.,* 754 F.2d 512, 516 (4th Cir.1985); *United States v. Johnson,* 892 F.2d 707, 711–15 (8th Cir.1989) (Lay, C.J., concurring). Among the "perils" contemplated are some of which the Second Circuit wrote in *Ajmal:*

> When acting as inquisitors, jurors can find themselves removed from their appropriate role as neutral fact-finders. If allowed to formulate questions throughout the trial, jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts. The practice also delays the pace of trial, creates a certain awkwardness for lawyers wishing to object to juror-inspired questions, and runs a risk of undermining litigation strategies. Moreover, juror questioning is particularly troublesome when it is directed at the defendant himself in a criminal trial. In such circumstances, premature deliberation and expressed skepticism by jurors can be highly prejudicial.

67 F.3d at 14 (citations omitted); *see also Johnson,* 892 F.2d at 711–15. While these concerns undoubtedly were not dismissed by the *Report* committee, the committee members agreed with the courts and commentators who espoused the idea that:

> carefully controlled juror questioning enhances active participation by jurors in the fact-finding process and improves juror comprehension. Among the advantages of juror questioning are: it assists in clarifying information and avoiding confusion; jurors remain more alert and better focused; jurors seem more satisfied concerning their roles at trial; and their questions may reveal juror confusion or misconduct. If proper safeguards are announced and carefully followed, no substantial risks are incurred.

*Report* at 91 (*citing* AMERICAN JUDICATURE SOCIETY, *Toward More Active Juries: Taking Notes and Asking Questions* (1991); Committee on Federal Courts of the New York State Bar Association, *Improving Jury Comprehension in Complex Civil Litigation,* 62 ST. JOHNS L. REV. 549, 558–61 (1988); Wolff, *Juror Questions* ); *see* Larry Heuer & Steven Penrod, *Increasing Juror Participation in Trials through Note Taking and Question Asking,* 79 JUDICATURE 256 (1996). "It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 386–87, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting). Rule 18.6(e) does not offend a defendant's constitutional right to an impartial jury and thus there was no error.

### 2. Record of Jury Poll.

▮ After the jury announced its verdict, defense counsel accepted the trial court's offer to poll the jury. Although the transcript indicates parenthetically that the jury was polled, the court reporter did not record the individual responses of the jurors. The minute entry states that "[t]he jury replies that these are their true verdicts." The defendant now asserts that the reporter's failure to transcribe the individual responses of the jurors "deprived [him] of his polling right, and his right to appeal." We disagree.

The court reporter should have recorded the polling process rather than simply noting that it occurred. However, there is an adequate record of the poll. The minute entry unambiguously indicates the jurors' replies "that these are their true verdicts." The defendant does not contend that the minute entry is erroneous or that the verdict was anything but unanimous, and this court attributes verity to unambiguous minute entries which "speak for themselves." *State v. Binford,* 120 Ariz. 86, 88, 584 P.2d 67, 69 (App.1978); *see State v. Lindsay,* 5 Ariz.App. 516, 518, 428 P.2d 691, 693 (1967) (affirming trial court's finding that defendant waived presence of counsel based on statement to that effect in minute entry, notwithstanding defendant's later contention to contrary).

The defendant claims that appealable issues may have arisen during the poll. If that were true, counsel had a duty to raise such issues when polling concluded,[2] but the transcript showing that verbatim recordation resumed after the jury poll contains no discussion of any issues.

The extended record establishes that the trial court afforded the defendant his right to poll the jury, that the polling showed the unanimity of the verdict and that the court reporter's failure to chronicle the polling did not affect the defendant's rights.

## CONCLUSION

The defendant's conviction and sentence are affirmed.

RYAN, P.J., and KLEINSCHMIDT, J., concur.

---

2. The defendant attempts to avoid the presumption that "[m]atters not included in the record on appeal will be presumed to support the action of the trial court," *State v. Miller,* 120 Ariz. 224, 226, 585 P.2d 244, 246 (1978), on the basis that his trial counsel was unaware that the court reporter was not recording the polling. However, defense counsel had the opportunity to raise issues that arose during the poll after the process concluded and the court reporter resumed recording. The "silent record" for purposes of applying the presumption is the absence of an objection or motion after the poll concludes.