NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERNESTO ALONZO URIARTE-VELAZQUEZ, *Appellant.*

No. 1 CA-CR 14-0857
FILED 1-14-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2012-161699-005
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

Law Office of Nicole Farnum, Phoenix
By Nicole T. Farnum
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

**¶1**        Ernesto Alonzo Uriarte-Velazquez ("Defendant") appeals his convictions and sentences for burglary in the first degree, kidnapping (three counts), armed robbery, and aggravated assault (three counts).  Defendant argues that the failure of one of the victims to return for further testimony after an evening recess deprived him of due process and his right of compulsory process.  Defendant also argues that the resulting inability of the jury to question this victim constitutes structural error.  Finally, Defendant contends there was insufficient evidence to support one of the convictions for aggravated assault.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Defendant's convictions stem from a home-invasion robbery in which a group of masked men armed with handguns broke into a home occupied by the victims: Husband, Wife, Baby, and Cousin.[1]  After binding Husband and Cousin with tape and confining Wife and Baby to a bedroom at gunpoint, the robbers took Wife's cell phone and approximately $2,700 in cash.  The intruders fled when police responded to a 911 call from Wife, but were apprehended in the neighborhood around the victims' home.  Defendant, the get-away driver for the robbers, was taken into custody following a brief car chase.

**¶3**        Defendant was indicted on one count of burglary in the first degree, a class 2 felony and dangerous offense; three counts of kidnapping, class 2 felonies and dangerous offenses; one count of kidnapping, a class 2 felony and dangerous crime against children; three counts of armed robbery, class 2 felonies and dangerous offenses; and three counts of aggravated assault, class 3 felonies and dangerous offenses.  At trial, the court granted judgment of acquittal on the charge of kidnapping Baby, and the state dismissed one of the armed robbery counts.  The jury acquitted Defendant of one of the two remaining armed robbery counts but found

---

[1]        We view the evidence in a light most favorable to sustaining the verdicts.  *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

him guilty of the eight remaining counts as charged. The trial court imposed concurrent and consecutive presumptive prison terms totaling eighteen years. Defendant appeals.

## DISCUSSION

### I. DENIAL OF RIGHTS OF DUE PROCESS AND COMPULSORY PROCESS

**¶4** Defendant and his two codefendants were tried together. The evidence presented on the first day of trial included testimony by Husband and Wife. During direct examination, Husband admitted he was in federal custody for an immigration violation. He also testified his deportation was pending, and he was going to be sentenced for his immigration violation within days.

**¶5** Trial recessed for the evening after Defendant and his two codefendants completed their cross-examination of Husband. The next morning, Husband did not return to court for the state's redirect. Counsel later learned that federal authorities had deported him to Mexico.

**¶6** Defendant moved to dismiss or, alternatively, moved for a mistrial based on Husband's failure to return to court for further testimony. Defendant asserted that he intended to recall Husband as a hostile witness and that Husband's absence violated his right to compulsory process and his right to present a complete defense. During arguments on the motion, however, Defendant conceded that he had not subpoenaed Husband to testify at trial.

**¶7** Defendant argues that the trial court erred in denying his motion for mistrial, repeating the same arguments raised in the motion. We review a trial court's ruling on a motion for mistrial for abuse of discretion. *State v. Roque*, 213 Ariz. 193, 224, ¶ 131 (2006). But we review de novo questions regarding a defendant's right to compulsory process under the Sixth Amendment of the Constitution. *State v. Sanchez–Equihua*, 235 Ariz. 54, 56, ¶ 7 (App. 2014). A mistrial is one of the most dramatic remedies "and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).

**¶8** "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). "Implicit within this assurance is the right to offer the testimony of witnesses and to compel their attendance in order to present to the jury the defendant's as well as the prosecution's version of the facts so that the jury may determine the truth." *State v. Gilfillan*, 196 Ariz. 396, 402, ¶ 19 (App. 2000). This right, however, is not self-executing; the defendant must exercise this right on his own behalf. *See State v. Russell*, 175 Ariz. 529, 535 (App. 1993) (holding no denial of right to compulsory process where defendant "never invoked the powers of the court to compel [witness's] testimony").

¶9            Defendant had the right and opportunity to subpoena Husband's testimony at trial. *See State v. Carlos*, 199 Ariz. 273, 279, ¶ 22 (App. 2001). But he never did so. He cannot now claim a violation of his right of compulsory process. *See State v. Espinosa*, 101 Ariz. 474, 476 (1966).

¶10           We also reject Defendant's argument that he was denied due process because Husband failed to return for further questioning. Defendant and his two codefendants had concluded cross-examination of Husband before the trial recessed for the evening. Defendant had a full opportunity to confront this witness against him. The state was the only party deprived of additional testimony from Husband; Defendant has no standing to object on behalf of the state that Husband was not present for its redirect. Therefore, the trial court did not abuse its discretion by denying the motion for mistrial. *See Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity . . . [for] cross-examination . . . .").

¶11           The trial court likewise did not abuse its discretion by refusing to continue the trial until Defendant could locate Husband in Mexico and make arrangements for his return to Arizona. Continuance of trials is left to the sound discretion of the trial court, and we will not disturb the trial court's ruling unless we find a clear abuse of discretion and resulting prejudice. *State v. Amarillas*, 141 Ariz. 620, 622 (1984).

¶12           Here, the trial court informed defendants that it denied the continuance without prejudice, and that the denial could be reconsidered if the defendants demonstrated that Husband could be returned to Arizona for further testimony. The defendants were unable to do so. In these circumstances, we cannot say that the trial court abused its discretion by denying the continuance. *See State v. Blodgette*, 121 Ariz. 392, 395 (1979) (holding no abuse of discretion in denying continuance where defendant failed to subpoena witness).

II.    STRUCTURAL ERROR

**¶13**        Defendant also argues that Husband's failure to return for further testimony constitutes structural error because the jurors had no opportunity to question him under Ariz. R. Crim. P. 18.6(e). This rule states:

> Jurors shall be instructed that they are permitted to submit to the court written questions directed to witnesses or to the court; and that opportunity will be given to counsel to object to such questions out of the presence of the jury. Notwithstanding the foregoing, for good cause the court may prohibit or limit the submission of questions to witnesses.

**¶14**        "Structural error 'deprive[s] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence'" and therefore requires automatic reversal because prejudice is presumed. *State v. Valverde*, 220 Ariz. 582, 584, ¶ 10 (2009) (citation omitted). Our supreme court has stated that structural error exists only in extremely limited circumstances. *State v. Ring*, 204 Ariz. 534, 552, ¶ 46 (2003) (enumerating circumstances of structural error: a trial judge is biased; a defendant is denied counsel, access to counsel, self-representation, or a public trial; the reasonable doubt instruction is defective; or jurors were excluded because of race or views on the death penalty). Prejudice is inherent in these types of error as they infect "'the entire trial process' from beginning to end." *Id.* at 553, ¶ 46 (citation omitted).

**¶15**        Jurors' inability to submit questions to one witness simply does not amount to structural error. There is nothing inherently prejudicial in jurors being unable to pose questions to a witness.[2] Ariz. R. Crim. P. 18.6(e) is clear that jurors' ability to ask questions is not absolute, as the trial court "may prohibit or limit the submission of questions to witnesses." *See State v. Greer*, 190 Ariz. 378, 379 (App. 1997) (noting that the procedure is "always within the discretion of the trial court").

**¶16**        Moreover, Arizona is among a minority of jurisdictions with court rules that specifically allow juror questions in criminal trials. *See* Kristen L. Sweat, Note, *Juror Questioning of Witnesses in Criminal Trials: The "Jury's Still Out" in Illinois*, 2014 U. Ill. L. Rev. 271, 285-86 (2014). In the

---

[2]        Indeed, the rule explicitly allowing jurors' questions to witnesses did not exist in Arizona courts until 1995. *See* Ariz. R. Crim. P. 18.6(e), cmt. to 1995 Amendment. Though this practice is a sound enhancement to trials in our courts, it is not an essential component of constitutional due process.

majority of jurisdictions, jurors may only question witnesses at the discretion of the court. Mitchell J. Frank, *The Jury Wants to Take the Podium — But Even With the Authority to Do So, Can It? An Interdisciplinary Examination of Jurors' Questioning of Witnesses at Trial*, 38 Am. J. Trial Advoc. 1, 8 (2014). If jurors' inability to pose questions to witnesses were structural error, all convictions from courts where jurors were not permitted to ask questions to witnesses would be called into question. We therefore reject Defendant's argument that Husband's failure to return to trial for jury questions constitutes structural error.

III.     SUFFICIENCY OF EVIDENCE

**¶17**        Defendant argues there was insufficient evidence to support the conviction for aggravated assault against Cousin. We review claims of insufficient evidence de novo, viewing the evidence in the light most favorable to upholding the verdict. *State v. Chappell*, 225 Ariz. 229, 233 n.1, ¶ 2 (2010).

**¶18**        Defendant was charged with aggravated assault against Cousin in violation of A.R.S. §§ 13-1203(A)(2) and -1204(A)(2). To support a conviction on this count, the state had to prove that Defendant intentionally placed Cousin in reasonable apprehension of imminent physical injury using a firearm, a deadly weapon, or dangerous instrument. Defendant argues the evidence was insufficient to sustain the state's burden because it presented no eyewitness testimony demonstrating that Defendant or his codefendants committed aggravated assault against Cousin with a weapon or dangerous instrument. We disagree.

**¶19**        Our review of insufficient-evidence claims is limited to whether substantial evidence supports the verdicts. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a) (requiring trial court to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction"). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996). Substantial evidence may be direct or circumstantial, and "the probative value of the evidence is not reduced simply because it is circumstantial." *State v. Anaya*, 165 Ariz. 535, 543 (App. 1990). We will reverse a conviction for insufficient evidence only if "there is a complete absence of probative facts to support [the jury's] conclusion." *State v. Mauro*, 159 Ariz. 186, 206 (1988).

**¶20**        Although Cousin did not testify at trial, Husband and Wife's testimony was sufficient to support the guilty verdict for aggravated assault on Cousin. To be guilty of aggravated assault, Defendant or an accomplice

"need only intentionally act using a deadly weapon or dangerous instrument so that the victim is placed in reasonable apprehension of imminent physical injury"; the victim does not need to testify to actual fright, but rather "[e]ither direct or circumstantial evidence may prove the victim's apprehension." *State v. Wood*, 180 Ariz. 53, 66 (1994) (citation omitted).

¶21　　　　Here, the jury could find, based on the evidence, that Defendant's accomplices, wearing masks and armed with handguns and knives, burst into the home where Cousin resided. Husband testified that the intruders approached him and Cousin. They then blindfolded Husband, threatened him with a knife, forced him to the ground, and bound him with tape. Because he was blindfolded, Husband could not say exactly what the intruders did to Cousin. But Wife testified that, while she was being held at gunpoint in another room, she heard both Husband and Cousin yelling that the intruders were hurting them. After the intruders fled, Wife found Cousin bound on the floor, and she removed the tape from his hands and feet. The jury could reasonably conclude from the totality of this evidence that the intruders restrained Cousin just like Husband. And because the intruders had guns and knives, they placed him in reasonable apprehension of imminent physical injury if he resisted. A jury could find beyond a reasonable doubt that Defendant was guilty of aggravated assault against Cousin.

## CONCLUSION

¶22　　　　For the foregoing reasons, we affirm Defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama